**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LUIS JOSE LUZARDO-AREVALO<br>**Plaintiff**<br>v.<br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.<br>**Defendants** | CIVIL NO. 20-1734 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Federal Defendants' *Motion to Dismiss Complaint* ("*Motion to Dismiss*"). (Docket No. 13). For the reasons discussed below, Defendants' *Motion to Dismiss* is **GRANTED.**

## I. BACKGROUND

Plaintiff Luis Jose Luzardo-Arevalo ("Plaintiff" or "Mr. Luzardo") filed the present *Complaint for Review of Naturalization Application and for Declaratory Relief* (the "*Complaint*") against the United States Citizenship and Immigration Services ("USCIS") and various federal government officials (collectively "Defendants"). (Docket No. 2).

Plaintiff, a Venezuelan citizen, was initially admitted to the United States in 1997. Id. ¶ 16. In 2005, he pled guilty to violating 18 U.S.C. § 1001 for "conspiracy to make a materially false, fictitious, or fraudulent statement" when he applied for, and subsequently received, a Twenty-five Thousand Dollar

($25,000.00) Small Business Administration ("SBA") loan. Id. ¶¶ 17, 46. Pursuant to the plea agreement, Mr. Luzardo was to be held responsible for more than Five Thousand Dollars ($5,000.00) but less than Ten Thousand Dollars ($10,000.00). Id. ¶ 19.

The USCIS denied Plaintiff's subsequent naturalization application in 2019, finding that he was barred from establishing the requisite good moral character because he was convicted of an "aggravated felony" as defined in the Immigration and Nationality Act ("INA" or the "Act"), 8 U.S.C. §§ 1101 et seq. Id. ¶ 34. Namely, an offense involving fraud or deceit for which the loss to the victim or victims exceeds $10,000. Id. Plaintiff maintains that the USCIS wrongfully denied his application for naturalization and seeks judicial review of the denial of his application for naturalization and declaratory relief pursuant to Section 310(c) of INA, 8 U.S.C. § 1421(c), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Id. ¶¶ 1, 13-14.

Defendants filed a Motion to Dismiss. (Docket No. 13). Defendants assert that courts should analyze the specific circumstances surrounding the offense committed when determining whether the victim's loss exceeds the INA's $10,000 threshold. Id. at 13-14. Moreover, they argue that the fact that Mr. Luzardo was held responsible for less than $10,000 in the plea deal is irrelevant to this analysis. Id. Defendants also argue that the Court lacks subject matter jurisdiction under the APA because

Plaintiff is already seeking *de novo* review under the INA. Id. at 10. In response, Plaintiff filed an *Opposition*. (Docket No. 17). Additionally, Defendants filed a *Reply* and Plaintiff filed a *Surreply*. (Docket Nos. 18 and 21, respectively).

## II. APPLICABLE LAW

### A. Dismissal for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), the plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, […] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory

factual allegations as true. See Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). They may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quotation omitted).

### B. Dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

Federal courts are courts "of limited jurisdiction, limited to deciding certain cases and controversies." Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 21 (1st Cir. 2016). The "party asserting jurisdiction has the burden of demonstrating its existence." Fina Air Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008). Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. A defendant may challenge the existence of subject matter jurisdiction either through a "facial attack" or a "factual attack." Id.

"In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction." Compagnie Mar. Marfret v. San Juan Bay Pilots Corp., 532 F. Supp. 2d 369, 373 (D.P.R. 2008) (quotation omitted). The court must take all the allegations in the complaint as true and determine if the plaintiff sufficiently

evinced a basis of **subject matter jurisdiction**. *See* <u>Torres-Negron v. J & N Records, LLC</u>, 504 F.3d 151, 162 (1st Cir. 2007). Whereas "a factual attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." <u>Compagnie Mar. Marfret</u>, 532 F. Supp. 2d at 373 (quotations omitted). When facing a factual attack, the court is "not confined to the allegations in the complaint and 'can look beyond the pleadings to decide factual matters relating to jurisdiction.'" <u>Rivera Torres v. Junta de Retiro Para Maestros</u>, 502 F. Supp. 2d 242, 247 n.3 (D.P.R. 2007) (quotation omitted).

### C. Statutory requirements for naturalization

Pursuant to the INA, to be eligible for naturalization, the applicant must establish the following:

> (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States **for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time**, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) <u>**during all the periods referred to in this subsection has been and still is a person of good moral character**</u>, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added).

To that end, the Act identifies specific conduct and convictions that bar individuals from asserting good moral character, providing that:

> **No person shall be regarded as, or found to be, a person of good moral character** who, during the period for which good moral character is required to be established is, or was—
>
> […]
>
> one **who at any time has been convicted of an aggravated felony** (as defined in subsection (a)(43)) [.]

8 U.S.C. § 1101 (f)(8) (emphasis added). Subsection (a)(43), alluded to above, defines which offenses qualify as an aggravated felony under the INA. In its relevant part, subsection (a)(43)(M) states that an aggravated felony can consist of "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" as well as "**an attempt or conspiracy to commit**" such an offense. 8 U.S.C. §§ 1101 (a)(43)(M)(i), (U). (emphasis added).

### D. Judicial review of naturalization applications

Under the Act, if an application for naturalization has been denied, after a hearing before an immigration officer, the applicant "may seek review of such denial before a United States district court for the district in which such person resides." 8 U.S.C. § 1421 (c). Said review is *de novo*, and the court must make

its own findings of fact, conclusions of law, and shall conduct a hearing if requested. Id.

"However, because the review of naturalization proceedings is subject to the Federal Rules of Civil Procedure, a court need not conduct an evidentiary hearing [when] there are no disputed issues of material fact." Del Orbe v. Holder, 2012 WL 3826182, at *2 (S.D.N.Y. 2012) (citing Chan v. Gantner, 464 F.3d 289, 295-96 (2d Cir. 2006)). Consequently, when a plaintiff seeks review of the USCIS's determination regarding the requisite good moral character, the Court may only grant a motion to dismiss "if Petitioner can prove no set of facts under which the Court could find that he has demonstrated good moral character during the statutory period, and thus, is entitled to naturalization." Gizzo v. I.N.S., 2003 WL 22110278, at *2 (S.D.N.Y. 2003).

### III. OPERATIVE FACTS[1]

Pursuant to the standards governing dismissal under Fed. R. Civ. P. 12(b)(6), as well as § 1421 (c) of the INA requiring district courts make findings of facts, the following facts, derived from the non-conclusory allegations in the *Complaint* and its exhibits, are taken as true for purposes of this motion:

---

[1] References to a Finding of Fact shall be cited as follows: (Fact ¶__).

1. On August 26, 1997, Mr. Luzardo, a national and citizen of Venezuela, obtained legal permanent resident status in the United States. (Docket No. 2 ¶ 16).

2. On June 9, 2005, Plaintiff plead guilty in Criminal Case No. 05-210 before the United States District Court for the District of Puerto Rico to Count One (1) of the Information charging Mr. Luzardo with conspiring to "knowingly and willfully make a false, fraudulent, and fictitious material statement and representation in a matter within the jurisdiction of the Small Business Administration for the purpose of obtaining loans from an agency and/or department of the United States through an intermediary in violation of [18 U.S.C. § 1001]." (Docket Nos. 2 ¶ 17; 2-4 at 1).

3. In the plea agreement, the Government agreed to request the dismissal of the Indictment in case United States v. Luis A. Hernández-Ramírez, et al., 04-338, with regards to Mr. Luzardo after he was sentenced. (Docket No. 2-4 at 4).

4. On June 9, 2005, in Criminal Case No. 4-338, Hon. Judge Carmen Consuelo Cerezo granted the Government's motion for dismissal pursuant to Fed. R. Crim. P. 48(a) and issued a Judgment of Discharge regarding Mr. Luzardo-Arevalo. (Docket Nos. 2 ¶ 18; 2-3).

5. In the plea agreement, Mr. Luzardo adopted a Statement of Facts and "agree[d] that the facts therein are accurate in

   every respect and, had the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt." (Docket No. 2-4 ¶ 14).

6. The Statement of Facts, which Mr. Luzardo signed, provides the following:

   > On or about June of 1998, Luis A. Hernández Ramírez, owner of Importaciones Hernández, applied for a micro-loan through Corporación para el Fomento Económico de la Ciudad Capital ("COOFEC"), a Small Business Administration ("SBA") approved intermediary, but his request was denied due to his poor credit. From in or about September of 1999, and continuing thereafter until in or about October 1999, in the District of Puerto Rico, defendant Luis José Luzardo Arévalo, did knowingly and willfully combine, conspire, confederate and agree with Luis A. Ramírez Hernández, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly and willfully make a false, fraudulent, and fictitious material statement and representation in a matter within the jurisdiction of the SBA for the purpose of obtaining loans from an agency and/or department of the United States through an intermediary in violation of Title 18 of the United States code, Section 1001.
   >
   > It was the object of the conspiracy that Luis José Luzardo Arévalo, and others known and unknown to the grand jury, would obtain monies from the SBA through COOFEC by making loan applications containing materially false, fraudulent, and fictitious statements as to the purpose for which the funds would be destined to.
   >
   > It was part of the manner and means of the conspiracy that Luis José Luzardo Arevalo and others known and unknown to the grand jury would state in loan applications to COOFEC fictitious purposes for which the SBA loan proceeds would be used, when in truth and in fact the proceeds were destined to Luis A. Hernández Ramírez or to

>
> Importaciones Hernández, a business owned by Luis A. Hernández Ramírez.
>
> It was also part of the manner and means of the conspiracy that Luis José Luzardo Arevalo and others known and unknown to the grand jury would provide information about their respective businesses in their loan applications to COOFEC knowing that said entities would not be the ultimate beneficiaries of the SBA micro-loans obtained through COOFEC. In furtherance of the conspiracy and to effect its objects, the following over acts, among others, were committed in the District of Puerto Rico and elsewhere within the jurisdiction of this Court:
>
> 1. On or about September 24, 1999, Luis José Luzardo Arevalo, at the time an employee of Luis Hernández and allegedly the owner of Importaciones Luzardo, applied for a twenty-five thousand ($25,000.00) SBA micro-loan through COOFEC.
>
> 2. In October of 1999, **COOFEC issued two SBA-funded checks to Luis José Luzardo Arevalo, one in the amount of nineteen thousand nine hundred fifty-four dollars ($19,954.00) payable to "Roses and More distributors", allegedly a supplier of Importaciones Luzardo, and another one in the amount of four thousand eight hundred dollars ($4,800.00) payable to Luis José Luzardo Arevalo**.
>
> 3. On or about October 6, 1999, the four thousand eight hundred dollars ($4,800.00) check was deposited in Citibank account number account number 5650925, as an account under the name of Luis Hernández, while on or about October 7, 1999, the nineteen thousand nine hundred fifty-four dollars ($19,954.00) check was deposited in the same account.

Id. at 9-10 (emphasis added).

7. The parties also stipulated that Mr. Luzardo "should be held responsible **for more than FIVE THOUSAND DOLLARS ($5,000.00),**

   **but less than TEN THOUSAND DOLLARS ($10,000.00) of the total amount of funds unlawfully obtained by means of the conspiracy described above**." (Docket Nos. 2 ¶ 19; 2-4 at 10) (emphasis added).

8. The plea agreement expressly identified its limitations, providing that "[t]his plea agreement binds only the United States Attorney's Office for the District of Puerto Rico and the defendant; it does not bind any other federal district, state or local authorities." (Docket No. 2-4 ¶ 15).

9. Additionally, Mr. Luzardo "acknowledge[d] that pleading guilty and entering into this plea may have a negative effect upon [his] immigration status within the United States." Id. ¶ 16.

10. The Immigration and Naturalization Service ("INS"), precursor to the United States Citizenship and Immigration Services ("USCIS"), initiated removal proceedings against Mr. Luzardo on October 25, 2006, for having been convicted of a "a crime involving moral turpitude" pursuant to Section 212 of the Immigration and Naturalization Act ("INA"). (Docket No. 2 Id. ¶¶ 20-21).

11. Likewise, on November 27, 2006, the United States Immigration and Customs Enforcement ("ICE") recognized that Mr. Luzardo "was inadmissible for parole due to a conviction for a crime involving moral turpitude." Id. ¶ 23.

12. On January 5, 2007, Mr. Luzardo filed a request for waiver before the USCIS under Section 212(h) of the INA. The USCIS subsequently processed Plaintiff's request and issued an approval letter on January 2, 2020. Id. ¶ 24.

13. On October 25, 2008, the Immigration Court granted Mr. Luzardo a waiver under Section 212(h) of the INA and provided him with post-order instructions to be able to receive immigration documents. Id. ¶¶ 25-26.

14. Mr. Luzardo complied and the USCIS issued him his legal permanent resident card valid from October 24, 2008 until January 2, 2030. Id. ¶ 27.

15. On March 16, 2016, the USCIS received Mr. Luzardo's Application for Naturalization (Form N-400). Id. ¶ 28.

16. After interviewing, fingerprinting, and requesting additional information from Luzardo, the USCIS issued a Decision on June 4, 2019 denying Plaintiff's Form N-400 Application for Naturalization on the basis of his conviction, stating:

> The record reflects that on June 9, 2005, you were convicted by the U.S. District of Puerto Rico for conspiracy to make a materially false, fictitious, or fraudulent statement under 18 U.S.C. section 1371 and 18 U.S.C. section 1001 (Case Number: 05-210). For this you were sentenced to two years of probation. According to the Presentence Investigation Report created for this case, you defrauded the Small Business Administration of at least $24,754 (you received one check for $19,954 and another for $4,800). This conviction qualifies

> as an aggravated felony under INA section 101(a)(43)(M), as an offense that involves fraud of deceit in which the loss ot [sic] the victim exceeds $10,000 and INA section 101(a)(43)(U) an attempt or conspiracy to commit an offense described on this paragraph, specifically a fraud or deceit offense under INA section 10(a)(43)(M).
>
> […]
>
> To be eligible for naturalization, you must demonstrate that you are a person of good moral character. Because you have been convicted of an aggravated felony on or after November 29, 1990, you are permanently barred from establishing good moral character. Therefore, you are ineligible for naturalization.

(Docket Nos. 2 ¶¶ 29-31, 34; 2-13 at 2).

17. Mr. Luzardo filed with the USCIS a "Request for Hearing on a Decision in Naturalization Proceedings" (Form N-336) on July 2, 2019. (Docket No. 2 ¶ 39).

18. Plaintiff also submitted his plea agreement for the USCIS's consideration. Id. ¶ 41.

19. The USCIS interviewed Mr. Luzardo in connection with his Form N-336 request on November 5, 2019. Id. ¶ 43.

20. On May 12, 2020, the USCIS issued a Decision regarding Luzardo's Form N-336 and reaffirming the decision to deny his naturalization request. Therein, the USCIS maintained that although, pursuant to the plea agreement, Mr. Luzardo was held responsible for less than $10,000, the specific circumstances surrounding the commission of the felony "demonstrate that the loss to the victim, which was the SBA

in this case, exceeded $10,000." (Docket Nos. 2 ¶¶ 44-46; 2-19 at 2).

## IV. ANALYSIS

### A. Mr. Luzardo stipulated in his plea agreement that the loss to the SBA exceeded $10,000

The question before the Court is purely legal: whether the USCIS erroneously determined that Plaintiff committed an aggravated felony where the loss to the victim or victims exceeds $10,000, therefore barring him from becoming a naturalized United States citizen. Mr. Luzardo's main argument is that in the plea agreement, he and the United States Government limited his criminal responsibility to less than $10,000. (Docket No. 2 ¶ 54). Thus, Plaintiff maintains the USCIS erred when considering the Presentence Investigation Report and concluding that he committed an aggravated felony by conspiring to defraud the SBA of at least $24,754. Id. ¶ 34.

To determine whether an offense involving fraud constitutes an "aggravated felony" under the INA, the statute instructs the Court to analyze if the "loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101 (a)(43)(M)(i). As correctly asserted by Defendants, in Nijhawan v. Holder, the Supreme Court established that this monetary threshold "**applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion**." Nijhawan v. Holder, 557 U.S.

29, 40 (2009) (emphasis added). The Court in Nijhawan "rejected a 'modified categorical approach,' which would limit the evidence to 'a jury verdict, or a judge-approved equivalent ... [such as] charging documents, jury instructions, and any special jury finding ... [, or] written plea documents or the plea colloquy.'" Kaplun v. Att'y Gen. of U.S., 602 F.3d 260, 265 (3d Cir. 2010) (quoting Nijhawan, 557 U.S. at 41). Rather, the Court opted to "fashion[n] a **circumstance-specific approach** for determining whether a particular crime of fraud or deceit caused losses greater than $10,000." Nanje v. Chaves, 836 F.3d 131, 135 (1st Cir. 2016) (citing Nijhawan, 557 U.S. at 36-38). In doing so, it concluded that courts could consider "sentencing-related material" such as a defendant's **stipulation for sentencing** and restitution orders. Nijhawan, 557 U.S. at 742-43. *See also* Orellana v. Mayorkas, 6 F.4th 1034, 1040-41 (9th Cir. 2021) (holding that courts engaging in a circumstance-specific analysis to assess the loss to a victim are "generally free to consider any admissible evidence relevant to making such a determination.").

Plaintiff attempts to distinguish his case from Nijhawan, arguing that he did not stipulate a loss in excess of $10,000 whereas the petitioner in Nijhawan *had* stipulated that the loss to the victim exceeded $100 million and there was a restation order for $683 million. (Docket No. 2 ¶ 51). While the figures vary greatly, Mr. Luzardo's contention that he did not stipulate a loss

in excess of $10,000 **is simply not supported by the plea agreement**. The Statement of Facts accompanying the plea agreement, and bearing Mr. Luzardo's signature, states that: (1) Plaintiff, acting as the alleged owner of Importaciones Luzardo, applied for a **$25,000 SBA loan** through COOFEC; (2) that COOFEC issued two SBA-funded checks to Mr. Luzardo, **one in the amount of $19,1954 and another one in the amount of $4,800**; and (3) that said checks were deposited into accounts under the name of Luis Hernández, who had been denied a SBA loan. (Fact ¶ 6). In the plea agreement, Mr. Luzardo adopted said Statement of Facts and "agree[d] that **the facts therein are accurate in every respect and, had the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt**." (Fact ¶ 5). Although Plaintiff was only held responsible for less than $10,000, the specific circumstances of the case, as evinced by the facts stipulated by Mr. Luzardo in the plea agreement's Statement of Facts, reflect that the *actual* loss to the victim, here the SBA, exceeded $10,000. Therefore, the Court must necessarily conclude that Mr. Luzardo was convicted of an aggravated felony as defined by § 1101(a)(43)(M)(i) and is therefore not eligible for naturalization. *See, e.g.* Dolgosheev v. U.S. Citizenship & Immigr. Servs., 2008 WL 2950766, at *11 (W.D. Pa. 2008) (holding that "[s]imple multiplication shows that the loss to Microsoft [the victim] far exceeds $10,000 requirement of § 1101(a)(43)(M)(i)" because the plaintiff pled guilty to

selling at least 52 units of counterfeit software and admits that the retail value of one legitimate unit of Microsoft software is $400). It is worth noting that the INA establishes that an individual "who at any time has been convicted of an aggravated felony" **cannot** subsequently establish good moral character. 8 U.S.C. § 1101(f)(8). Thus, an "applicant convicted of an aggravated felony is precluded under 8 U.S.C. § 1101(f)(8) from establishing good moral character regardless of when the conviction occurred." Chan v. Gantner, 464 F.3d 289, 294 (2d Cir. 2006) (citing Boatswain v. Gonzales, 414 F.3d 413, 418 (2d Cir. 2005)).

Plaintiff's additional arguments also fail upon review. Plaintiff's argument that the USCIS "reclassifying" his crime years later creates uncertainty for aliens in similar positions and constitutes a deterrent for future collaboration with the United States Government is undermined by the text of the plea agreement. (Docket No. 2 ¶ 56). Therein, Mr. Luzardo explicitly "acknowledge[d] that pleading guilty and entering into th[e] plea may have a negative effect upon [his] immigration status within the United States." (Fact ¶ 9). Therefore, the record reflects that Mr. Luzardo "should have been on notice that his plea might adversely affect his ability to become a naturalized citizen." Nanje v. Chavez, 134 F. Supp. 3d 544, 548 (D. Mass. 2015), aff'd sub nom. Nanje, 836 F.3d at 137.

In his *Opposition* to the *Motion to Dismiss*, Plaintiff asserts that an examination of the criminal case against Luis Hernández-Ramírez will reveal that *he* was the recipient of the two SBA funded checks issued to Mr. Luzardo. (Docket No. 17 ¶¶ 5-6). Further, Mr. Luzardo **already stipulated** in the plea agreement that these checks were deposited into accounts under Luis Hernández-Ramírez's name. (Fact ¶ 6). However, Plaintiff does not offer *any* citations to support how this negates the conspiracy to commit fraud that he pled guilty to and the losses it caused to the SBA. *See* L. CV. R. 7(a) (requiring adequate "citations and supporting authorities."). *Cf.* Orellana v. McAleenan, 2020 WL 1904588, at *4 (N.D. Cal. 2020), aff'd sub nom. Orellana v. Mayorkas, 6 F.4th 1034 (9th Cir. 2021) (citing Nijhawan, 577 U.S. at 42) (finding that the purpose of the aggravated felony inquiry is to analyze the nature of the prior conviction, not an opportunity to reopen a previous investigation and relitigate the conviction itself.).

**B. Mr. Luzardo's APA claim is precluded by the INA**

The APA provides for judicial review of a "final [United States Government] agency action **for which there is no other adequate remedy in a court**." 5 U.S.C. § 704 (emphasis added). As discussed above, the INA *already* enables petitioners to seek review in district court if their application for naturalization has been denied. *See* 8 U.S.C. § 1421 (c). When faced with this issue, district courts have routinely "held that **the judicial review**

**provided for in the INA precludes review under the APA**." Thioune v. United States Citizenship & Immigr. Servs., 2020 WL 1865875, at *2 (W.D. Ky. 2020) (emphasis added) (citing Anton v. Lynch, 2015 WL 12671386, at *3 (S.D. Fla. 2015) and Johnson v. Vilsack, 833 F.3d 948, 955 (8th Cir. 2016)). Therefore, Plaintiff cannot assert a claim pursuant to the APA given the procedure for judicial review provided by the INA.

## V. CONCLUSION

In light of applicable precedent and the factual stipulations of the plea agreement where Mr. Luzardo admitted to receiving two SBA-funded checks, one in the amount of $19,1954 and another one in the amount of $4,800, Plaintiff cannot establish sufficient facts to demonstrate the good moral character required for naturalization. Thus, the Court hereby **GRANTS** Defendants' *Motion to Dismiss* at Docket No. 13. The totality of Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of December 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge